UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:13-cv-612-RJC-DSC

| CHARLES H. JUNE, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) ORDER |
| CITY OF GASTONIA | ) |
| Defendant. | ) |

**THIS MATTER** comes before the Court on Defendant's Motion for Summary Judgment and supporting documents (Doc. Nos. 9, 10, 17), and Plaintiff's Amended Response in Opposition and supporting documents (Doc. Nos. 13, 16). This matter is ripe for review. For reasons that follow, the Court will grant Defendant's motion.

## I. BACKGROUND

Charles June, an African-American employee, sued the City of Gastonia for discriminatory failure to promote after he unsuccessfully interviewed for the job of crew chief. He had been hired by Defendant City of Gastonia in November 2007 as a Construction Worker II in the Public Works and Utilities department. (Doc. No. 1 at 2). He was promoted to Motor Equipment Operator within the same department on December 6, 2008. (Id.). On August 8, 2012, the position of crew chief within the asphalt division was posted, and Plaintiff applied for it. (Id.). On December 2, 2012, Plaintiff learned that Gary Upton, a Caucasian employee, had been chosen for the position. (Id.). Plaintiff then filed an internal grievance with the City of Gastonia alleging that he had more seniority and experience than Upton and that he was denied

1

the position of crew chief because of his race. (Id. at 3).

On March 18, 2013, Plaintiff incorporated that claim into a Charge of Discrimination (430-2013-00491) with the Equal Employment Opportunity Commission ("EEOC"). (Id. at 4). The EEOC investigated the charge and issued a right to sue letter on August 9, 2013. On November 7, 2013, Plaintiff instituted the action in this Court against the Defendant City of Gastonia alleging discriminatory failure to promote.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id. The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted). "The burden on the moving party may be discharged by 'showing' . . . an absence of evidence to support the nonmoving party's case." Id. at 325.

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party."

2

Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (internal citations omitted). The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. Anderson, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. Id. at 249-50.

The Plaintiff alleges race discrimination in violation of Title VII which is properly analyzed under the now-familiar McDonnell Douglas burden-shifting scheme. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, (2000). Under the McDonnell Douglas scheme, the plaintiff must establish a prima facie case of discrimination, at which point the burden shifts to the defendant to offer a legitimate, non-discriminatory explanation for the adverse employment action. Reeves, 530 U.S. at 142. If the employer does so, the ultimate burden falls on the plaintiff to establish "that the legitimate reasons offered by the defendant were not its reasons, but were a pretext for discrimination." Id. (citing Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248 (1981)).

### III. DISCUSSION

The Supreme Court in McDonnell Douglas articulated some common sense limits on anti-discrimination laws:

> Congress did not intend by Title VII…to guarantee a job to every person regardless of qualifications…[T]he Act does not command that any person be hired simply because he was formerly the subject of discrimination, or because he is a member of a minority group. Discriminatory preference for any group, minority or majority, is precisely and

3

> only what Congress has proscribed. What is required by Congress is the removal of artificial, arbitrary, and unnecessary barriers to employment when the barriers operate invidiously to discriminate on the basis of racial or other impermissible classification… There are societal as well as personal interests on both sides of this equation. The broad, overriding interest, shared by employer, employee, and consumer, is efficient and trustworthy workmanship assured through fair and racially neutral employment and personnel decisions. In the implementation of such decisions, it is abundantly clear that Title VII tolerates no racial discrimination, subtle or otherwise.

McDonnell Douglas, 411 US at 800-801 (citing Griggs v. Duke Power Co., 401 U.S. 424, 430-431 (1971)).

McDonnell's instruction is particularly appropriate in this case, an action brought by a disappointed employee passed over for the position of crew chief. Devoid of direct or indirect evidence of discrimination, it is not subject to Title VII protection.

**A. Plaintiff has failed to establish a prima facie case of discrimination.**

Under the "pretext" framework established in McDonnell Douglas, the plaintiff must first prove a prima facie case of discrimination. See Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 U.S. 277, 285 (4th Cir. 2004). It is an easy, "not onerous" burden. Texas Department of Community Affairs v. Burdine, 450 US 248, 253 (1981). In this "failure to promote" case, Plaintiff must establish that (1) he was a member of a protected class; (2) he applied for the position in question; (3) he was qualified for that position; and (4) the Defendant rejected his application under circumstances that give rise to an inference of unlawful discrimination. Bryant v. Aiken Regional Medical Centers, 333 F.3d 536 (4th Cir. 2003). Although the burden of proof is not onerous, Plaintiff's showing is insufficient to establish the fourth element.

Plaintiff has failed to provide enough evidence to create a genuine issue of fact as to whether Defendant rejected his application under circumstances that give rise to an inference of unlawful discrimination. It is undisputed that the interview committee included at least two

individuals who had originally hired and previously promoted him. The committee consisted of Dale Denton, Division Manager of Public Works; Randy Bell, Assistant Division Manager of the Street Department; Kenny Green, Manager in the Street Department; and Ed Stroud, Plaintiff's then supervisor. Stroud and Green are both African-Americans. Glenn and Stroud interviewed him when he was first hired. Denton and Stroud interviewed Plaintiff when he was first promoted from Construction Worker II to Motor Equipment Operator in 2008. Stroud was his immediate supervisor. Since the interview committee who did not choose him for the promotion to Crew Chief was comprised in part of the same persons who recommended Plaintiff both for hiring as a Construction Worker II and for promotion as a Motor Equipment Operator, there is a "powerful inference" that their subsequent decision not to promote him to crew chief was not motivated by discriminatory animus. Evans v. Applicant Technologies & Service Co., 80 F.3d 954, 959 (citing Proud v. Stone, 945 F.2d 796, 798 (4th Cir.1991)); see also Mitchell v. Data General Corp., 12 F.3d 1310, 1314 (4th Cir.1993). Plaintiff has shown no evidence that contradicts that inference.

It is similarly uncontested that the process involved the posting of a job description.[1]

---

[1] Crew Chief (Asphalt)
Pay grade has a minimum annual start of $34,216 with a midpoint of $43,412. Position in the Public Works & Utilities Department/Public Works Division (Asphalt Crew) to supervise and perform skilled construction work and operate construction equipment, such as backhoes, skid steers, asphalt maintainer, asphalt rollers and dump trucks. Must be able to perform manual labor duties in asphalt construction and repair, such as full-depth patching, utility cuts, asphalt curb, etc. Must have the ability to perform manual labor for extended periods, often under unfavorable weather conditions. Performs other tasks as required in the Public Works Division. General knowledge of the hazards and safety precautions of the work, traffic laws and OSHA regulations governing equipment operation safety. Position is required to be on-call after hours on a rotational basis. Seasonal duties involve snow removal and storm debris removal. General knowledge of work zone safety is preferred. Must have the ability to understand, follow and give oral and written directions. Education and experience equivalent to high school graduate and considerable experience in operation of medium and heavy size motorized construction equipment. Class A CDL with Restriction 8 (minimum) Required 90 Days Following Employment. Drug Screening Required. E O E - MIFIH. Ad 000. Slot #0000. Date Posted; 8/6/12. Position Open Until Filled, Applications/resumes may be mailed to City of Gastonia, Employment Division, PO Box 1748, Gastonia, NC 28053 or faxed to 704-836-0045. To apply in person please visit City of Gastonia Employment Division at City Hall, 181 South Street or resumes may be e-mailed to Jobs@cityofgastonia.com. Subject line of e-mails must include title of position.

More than forty candidates applied to that posting. The field was then narrowed to ten individuals to be interviewed. Plaintiff was one of the ten applicants given an interview. The committee analyzed the interviewees in terms of experience with supervision, safety, equipment, and job task knowledge as well as more subjective areas such as cooperation and attitude. Gary Upton was chosen because of his construction experience, his current possession of a Class A CDL license and his supervisory experience. All of these objective factors distinguished him from the Plaintiff. The Plaintiff testified that he asked various members of the committee why he was not chosen and was told that Upton was the candidate with the most experience (Bell), who had a Class A license (Denton). The undisputed evidence is that the Plaintiff was hired, promoted and included as a finalist in an application process that included members who had advanced him before. The context is remarkably devoid of any indicia of racial animus.

Plaintiff points to several facts to support the contrary conclusion. He claims that: (1) Upton had never worked in asphalt and had no asphalt experience; (2) all of Plaintiff's evaluations show that he was well-qualified for and performed the actual work of his job in a satisfactory manner; (3) Plaintiff had to train Upton once Upton assumed the Crew Chief position; (4) for the period of 2007 through 2014 there were forty-one employees in the Street Maintenance Division and fifteen were African Americans; (5) out of the fifteen African-Americans in the Street Maintenance Division, only one of them had been promoted from Construction Worker II to Motor Equipment Operator[2]; and (5) for the period of 2007 to February 2014 no African-American was promoted to Crew Chief despite the fact there were five vacancies. (Doc. No. 16 at 9-10).

Plaintiff's first three contentions do not alter the Court's conclusion that a reasonable jury

---

[2] The Plaintiff himself.

could not infer from these facts that Plaintiff's application was rejected based on unlawful discrimination. They are conclusory and speculative and not probative.

Plaintiff's statistical evidence is also unpersuasive. Statistical evidence is permissible to prove an employer's stated reason is a pretext for discrimination. Carter v. Ball, 33 F.3d 450, 456 (4th Cir. 1994) (quoting McDonnell Douglas, 411 U.S. at 804-05)). However, statistical evidence may not be useful where it has "little or no probative value." Id. For a claim based on discriminatory promotion, the relevant comparison is between the percentage of the promoted employees who are minorities and the percentage of potential minority applicants in the qualified labor pool. Id. Here, Plaintiff has put forth evidence that fifteen of forty-one members of the City's Street Maintenance Division work force were African-Americans. He claims that none of the African-Americans were named to the position of crew chief. We don't know if any of these employees applied for the position, except defendant. To be promoted to a supervisory position, the employee must both apply for the position and be deemed qualified. Plaintiff fails to include any statistical evidence as to qualified applicants. Thus, this evidence is not probative of the promoting practices of qualified applicants for supervisory positions. "The mere absence [or presence] of minority employees in upper-level positions does not suffice to prove ... discrimination without a comparison to the relevant labor pool." Carter, 33 F.3d at 456.

In this case, Plaintiff's offered statistics do not reveal the underlying facts and circumstances surrounding disparity in promotions. A reasonable juror could not infer unlawful discrimination or "a general pattern of discrimination" without more evidence on the context and circumstances that surround these figures. Warren v. Halstead Industries, Inc., 802 F.2d 746, 753 (4th Cir. 1986). Plaintiff merely points at the absence of African-American employees in the

upper-level Crew Chief position and fails to compare the relevant applicant pool; therefore, Plaintiff has failed to meet its prima facie case. See Carter, 33 F.3d at 456.

Furthermore, the evidentiary record contradicts Plaintiff's assertion, (Doc. No. 16 at 10), that for the period of 2007 to February 2014 no African-American was promoted to Crew Chief despite the fact there were five vacancies. Based upon the evidentiary record, Derek Sherrer, an African-American employee, was in fact promoted to Crew Chief for Water/Sewer on November 1, 2008. (Doc. No. 13-2 at 3). For these reasons, this Court finds that Plaintiff has failed to raise a genuine issue of material fact as to whether Defendant rejected his application under circumstances that give rise to an inference of unlawful discrimination.

**B. Assuming a prima facie case of discrimination, Defendant has asserted a non-discriminatory reason for termination that no reasonable jury could find pretextual.**

Assuming the Plaintiff was successful in establishing his prima facie case, the burden then shifts to the employer to articulate some legitimate, non-discriminatory reason for the decision not to promote. McDonnell Douglas, 411 U.S. at 807. If the Defendant meets this burden, the Plaintiff must then demonstrate that the Defendant's stated reason is merely a pretext for discrimination. Id. The ultimate question in every employment discrimination case is whether the Plaintiff was a victim of intentional discrimination. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 135 (2000). The burden is ultimately and always on the Plaintiff. Evans, 80 F.3d at 959.

Defendant has offered legitimate, non-discriminatory reasons for promoting Upton rather than Plaintiff. According to Randy Bell's deposition testimony, Upton was more experienced in construction, already had a Class A CDL license and had more supervisory experience. According to Dale Denton's deposition, Plaintiff was not the best candidate for the position because: he had received three verbal warnings in the five year period he had been with the City

of Gastonia; his supervisory experience was much less than other candidates; and he had no Class A CDL. (Doc No. 10-6). Plaintiff tries to explain away the warnings, argues that the Class A CDL could have been obtained within 90 days and ignores the lack of supervisory experience. But the reasons stubbornly remain.

In analyzing the employer's proffered reason, "it is not [the court's] province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it was truly the reason for the Plaintiff's [non-promotion]." DeJarnette v. Corning, Inc., 133 F.3d 293, 299 (4th Cir. 1998) (quoting Giannopoulos v. Brach & Brock Confections, Inc., 109 F.3d 406, 411 (7th Cir. 1997)). The evidentiary record demonstrates that Defendant's interview committee made the decision to hire based on analyzing the qualifications of the candidates who described an initial screen and were interviewed. The members cited numerous legitimate non-discriminatory reasons for hiring Upton, including the applicant's experience, supervisory experience, equipment experience, safety, attendance, cooperation, attitude, job and job task knowledge. (Doc. No. 10-5 at 5-7). For these reasons, the Court finds that Defendant has articulated legitimate, non-discriminatory reasons for promoting Upton rather than the Plaintiff.

If a plaintiff can show that he was not promoted under suspicious circumstances and that his employer lied about its reasons for firing him, the factfinder may infer that the employer's undisclosed retaliatory animus was the actual cause of her termination. Reeves, 530 U.S. at 148, ("[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated"). In order to carry this burden, a plaintiff must establish "both that the [employer's] reason was false and that discrimination was the real reason for the challenged conduct." Jiminez v. Mary Washington Coll., 57 F.3d 369, 378 (4th Cir.1995) (quoting St.

9

Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993)).

Plaintiff attempts to offer evidence to establish pretext, but no reasonable jury could conclude from this offering that the "employer is dissembling to cover up a discriminatory purpose." Dennis v. Columbia Colleton Medical Center Inc., 290 F.3d 639, 648 (4th Cir 2002). The Court has found that Plaintiff failed to establish a prima facie case, but even assuming a weak one, when combined with Plaintiff's offering of dishonest justification, it falls short of any threshold sufficient for a reasonable jury to conclude, that in combination, the Defendant is covering up its discriminatory intent.

At the end of the day, Plaintiff complains of a process and a decision that left him out of the running for the crew chief position he coveted. He has not shown that racial animus tainted either. His disappointment is understandable, but his claim of discrimination is not actionable. No reasonable jury could find it is.

For these reasons, the Court **grants** Summary Judgment for Defendant on Plaintiff's discrimination claim.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Defendant's Motion for Summary Judgment (Doc. No. 9) is hereby **GRANTED**.
2. The Clerk of Court is instructed to close this case.

Signed: July 13, 2015

Robert J. Conrad, Jr.
United States District Judge